**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| **CLASSIC HOTELS, LLC, OCEAN HOSPITALITY, LLC, COASTAL HOSPITALITY LLC, FOREST HOSPITALITY, LLC, AND JACKSON DOWNTOWN HOTELS, LLC** | **PLAINTIFFS** |
| **v.** | **CIVIL ACTION NO.:** <u>1:24cv213 TBM</u>-RPM |
| **UNITED STATES SMALL BUSINESS ADMINISTRATION, ISABELLA CASILLAS GUZMAN, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE SMALL BUSINESS ADMINISTRATION; JANET YELLEN, IN HER OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF TREASURY; AND THE UNITED STATES DEPARTMENT OF JUSTICE; ATTORNEY GENERAL MERRICK GARLAND** | **DEFENDANTS** |

<u>**COMPLAINT FOR DECLARATORY
JUDGMENT AND MANDAMUS RELIEF**</u>

COMES NOW, Plaintiffs Classic Hotels, LLC ("Classic Hotels"), Ocean Hospitality, LLC ("Ocean Hospitality"), Coastal Hospitality, LLC ("Coastal Hospitality"), Forest Hospitality, LLC ("Forest Hospitality"), and Jackson Downtown Hotels, LLC ("Jackson Downtown"), (collectively, "Plaintiffs"), by and through their attorneys, and as for its Complaint against Defendants and alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.     This is an action for a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining a question of actual and immediate controversy between the parties.

2.     Plaintiffs seek a declaratory judgment that (1) Plaintiffs were eligible to apply for a Paycheck Protection Program ("PPP") loan; (2) Plaintiffs were eligible to receive a PPP loan; (3) Plaintiffs' commingling of PPP loan proceeds with current monies in existing bank accounts

was not prohibited by and did not violate the U.S. Code or SBA regulations; (4) Plaintiffs used the PPP loan proceeds appropriately for eligible expenses; (5) Plaintiffs' use of its own funds, which were commingled with but in excess of PPP loan proceeds, for non-PPP purposes did not violate the U.S. Code or SBA regulations, and (6) Plaintiffs did not falsely certify their PPP loan forgiveness applications.

3.      Further, Coastal Hospitality, Forest Hospitality, and Jackson Downtown seek mandamus relief pursuant to 28 U.S.C. §§ 1331, 1361 and 1651(a) compelling Defendant United States Small Business Administration ("SBA") to forgive their Second Draw PPP Loans.

4.      Defendant U.S. Department of Justice has issued Civil Investigative Demands ("CIDs") to Plaintiffs in an effort to determine the legitimacy of PPP loans and associated loan forgiveness extended to Plaintiffs by Defendant SBA, presumably in an effort to bolster allegations of violations of the False Claims Act and FIRREA. As such, an actual case and controversy exists.

## PARTIES

5.      Classic Hotels is a limited liability company organized under the laws of Mississippi with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Classic Hotels owns and operates a SpringHill Suites 15610 Daniel Boulevard, Gulfport, MS 39503 located in the Southern District of Mississippi.

6.      Coastal Hospitality is a limited liability company organized under the laws of Mississippi with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Coastal Hospitality owns and operates a Hampton Inn & Suites, 15580 Daniel Blvd, Gulfport, Mississippi 39503 located in the Southern District of Mississippi.

7.      Forest Hospitality is a limited liability company organized under the laws of Mississippi with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Forest Hospitality owns and operates a Fairfield Inn & Suites located at 800 15th

Court East, Meridian, Mississippi 39301 located in the Southern District of Mississippi

8.    Jackson Downtown is a limited liability company organized under the laws of Mississippi with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Jackson Downtown owns and operates a Hampton Inn & Suites located at 320 Graymont Street, Jackson, Mississippi 39202 located in the Southern District of Mississippi.

9.    Ocean Hospitality is a limited liability company organized under the laws of Mississippi with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Ocean Hospitality owns and operates a Home2 Suites by Hilton, 15600 Daniel Blvd, Gulfport, Mississippi 39503 located in the Southern District of Mississippi

10.   Defendant United States Small Business Administration ("SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq.* Under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, the SBA administers the PPP.

11.   Defendant Isabella Casillas Guzman is the Administrator of the SBA and is sued only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for this cause of action. *See* 13 C.F.R. § 101.1 01(a)(1-2).

12.   Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is sued only in her official capacity.

13.   Defendant U.S. Department of Justice ("DOJ") is an executive department of the United States federal government.

14.   Defendant Merrick Garland is the Attorney General of the United States, the principal officer of DOJ and is sued only in his official capacity.

## JURISDICTION & VENUE

15.   This Court has jurisdiction over the subject matter of this civil action under 28

U.S.C. §§ 1331 and 2201 because the claims arise under the laws of the United States.

16.    This Court also has jurisdiction pursuant to 15 U.S.C. § 634(b)(1) which vests jurisdiction in any United States District Court to adjudicate cases against the Administrator of the SBA.

17.    The jurisdiction to grant declaratory relief is conferred upon the Court by Rule 57 of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 2201.

18.    The SBA's denial of PPP relief to Plaintiff are final agency actions under 5 U.S.C. § 704, which this Court has authority to review under 5 U.S.C. § 702.

19.    Further, Coastal Hospitality, Forest Hospitality, and Jackson Downtown seek mandamus relief pursuant to 28 U.S.C. §§ 1331, 1361 and 1651(a) compelling Defendant SBA to forgive the Second Draw PPP Loans for Coastal Hospitality, Forest Hospitality, and Jackson Downtown.

20.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because this is an action against officers and agencies of the United States, a substantial part of the events giving rise to the claims occurred in this judicial district, Plaintiff is incorporated and operates in this judicial district, and no real property is involved in the action.

21.    Venue is also proper in this judicial district specifically because the U.S. Department of Justice is conducting an investigation into Plaintiffs, and these investigations focused primarily on conduct within this judicial district.

## LEGAL BACKGROUND

### I.    The CARES Act and the Paycheck Protection Program

22.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic.

23.    One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The program was modified and extended thereafter.

24.    To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

25.    In the PPP loan application (SBA Form 2483), the business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

26.    A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

27.    PPP loan proceeds were required to be used by the business on certain permissible expenses — payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

A. <u>First Draw PPP Borrower Application Form</u>

28.     The PPP Borrower Application Form, effective April 2, 2020, required the

applicant to make the following certifications and authorizations, *inter alia*, relevant to this matter:

A.  The applicant was eligible to receive a loan under the rules ("PPP Rules") in effect at the time this application was submitted;

B.  All SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules;

C.  That funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules;

D.  That applicant would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following the loan;

E.  That the applicant understood that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs; and

F.  That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

B. <u>First Draw PPP Loan Forgiveness Application</u>

29.     The First Draw PPP Loan Forgiveness Application Form 3508EZ, expiration date

October 31, 2020, required the eligible recipient to make the following certifications:

A.  That the dollar amount for which forgiveness was requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- included payroll costs equal to at least 60% of the forgiveness amount;

- if a 24-week Covered Period applied, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and

B. That the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period or Alternative Payroll Covered Period compared to the period between January 1, 2020 and March 31, 2020;

C. That the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law; and

D. That the tax documents the applicant submitted to the Lender were consistent with those the Borrower has submitted/would submit to the IRS and/or state tax or workforce agency;

In addition, the Authorized Representative of the Borrower must certify by initialing at least **ONE** of the following two items:

E. That the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020, and reductions in an employee's hours that a borrower offered to restore and were refused).

F. That the Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by certain federal governmental agencies, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

C. Second Draw PPP Borrower Application Form

30.    The Second Draw PPP Borrower Application Form, effective January 8, 2021, required the applicant to make the following representations, authorizations, and certifications, *inter alia*, relevant to this matter:

A. That the applicant was eligible to receive a loan under the rules in effect at the time the application was submitted;

B. That all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules;

C. That the applicant had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period;

D. That the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the PPP Rules;

E. That the applicant understood that loan forgiveness would be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs; and

F. That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

D. Second Draw PPP Loan Forgiveness Applications

    i.    *Form 3508S (loans $150,000 or less)*

31.    The Second Draw PPP Loan Forgiveness Application Form 3508S, revised January 19, 2021, with an expiration date of July 31, 2021, required the eligible recipient to make the following certifications:

A. That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds;

- the amount of PPP loan proceeds that must be used for payroll costs;

- the calculation and documentation of the Borrower's revenue reduction (if applicable); and

- the calculation of the Borrower's Requested Loan Forgiveness Amount.

B. That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law;

    ii.    *Form 3508EZ*

32.    The Second Draw PPP Loan Forgiveness Application Form 3508EZ, revised January 19, 2021, expiration date July 31, 2021, required the eligible recipient to make the following certifications:

A.  The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);

- includes payroll costs equal to at least 60% of the forgiveness amount; and

- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.

B.  The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period;

C.  The Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan;

D.  The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects and applicant understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law; and

E.  The tax documents submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency;

In addition, the Authorized Representative of the Borrower must certify by initialing at least **ONE** of the following two items:

E.  The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for

a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).

F.   The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by certain federal governmental agencies, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

## II.    The False Claims Act

33.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

34.    The FCA provides, in pertinent part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

35. FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461 note. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $13,946 to a maximum of $27,894. *See* 28 C.F.R. § 85.5.

36.   For purposes of the FCA, the terms "knowing" and "knowingly"

A.  mean that a person, with respect to information—

(i)  has actual knowledge of the information;

(ii) acts in deliberate ignorance of the truth or falsity of the information; or

(iii) acts in reckless disregard of the truth or falsity of the information; and

B. require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

37.    Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. 31 U.S.C. § 3729(b)(2)(A).

38.    The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4).

### III.    FIRREA

39.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

40.    Section 951 of FIRREA, as amended, codified at 12 U.S.C. § 1833a, provides that the Attorney General may recover civil penalties of up to $1 million per violation against persons who commit specified violations as established by a preponderance of the evidence. 28 C.F.R. § 85.5 (the maximum civil penalty was increased to $2,073,133 for assessments after December 13, 2021, for which violations occurred after November 2, 2015).

41.    The statute further provides that the Attorney General alternatively may recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or the loss. *Id.*

42.    The predicate violations identified in Section 951 that can form the basis for liability under FIRREA include, among others: (a) knowingly or willfully making a materially false or fraudulent statement affecting a federally insured financial institution (18 U.S.C. § 1001); (b) making a false statement on a loan application to a financial institution, "the accounts of which are insured by the Federal Deposit Insurance Corporation" (18 U.S.C. § 1014); and (c) knowingly

making a false statement for the purpose of influencing a decision by the Administrator of the SBA or to obtain a loan, money, or anything of value under the SBA's 7(a) program, including the PPP (15 U.S.C. § 645(a)).

## FACTUAL BACKGROUND

### I.     Classic Hotels

43.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

### A.  First Draw PPP Loan Application

44.     On or before April 3, 2020, Classic Hotels applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Classic Hotels' First Draw PPP Loan Application is attached hereto as Exhibit A.

45.     As part of its First Draw PPP Loan Application, Classic Hotels certified, *inter alia*, that:

A.  it was eligible to receive a loan under the rules in effect at the time the application was submitted, with which Classic Hotels can prove its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit A, attached hereto.

B.  all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

C.  funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

D.  it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered

period following the loan, with which Classic Hotels can prove compliance, as illustrated in Exhibit A, attached hereto.

E. the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

46.    On April 13, 2020, the Lender approved Classic Hotels' First Draw PPP Loan Application.

47.    On April 20, 2020, loan proceeds were disbursed to Classic Hotels and deposited into Classic Hotels' bank account ending in X-46789.

48.    Classic Hotels complied with all certifications in its First Draw PPP Loan Application.

B. First Draw PPP Loan Forgiveness Application

49.    On November 19, 2020, Classic Hotels submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

50.    As part of its First Draw PPP Loan Forgiveness application, Classic Hotels certified, *inter alia*, that:

A. the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Classic Hotels proved compliance, as illustrated in Exhibit B, attached hereto;

B. the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Classic Hotels proved compliance, as illustrated in Exhibit B, attached hereto;

C. the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-

employed individual/general partner, capped at $20,833 per individual, with which Classic Hotels proved compliance, as illustrated in Exhibit B, attached hereto;

D.  the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Classic Hotels proved compliance, as illustrated in Exhibit B, attached hereto;

E.  the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Classic Hotels proved compliance, as illustrated in Exhibit B, attached hereto;

F.  it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Classic Hotels proved compliance, as illustrated in Exhibit B, attached hereto;

G.  it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Classic Hotels proved compliance, as illustrated in Exhibit B, attached hereto.

51.    On December 8, 2020, Classic Hotels received notification that its First Draw PPP Loan had been forgiven.

B. <u>Second Draw PPP Loan Application</u>

52.    On January 27, 2021, Classic Hotels applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Classic Hotels' Second Draw PPP Loan Application is attached hereto as Exhibit C.

53. As part of its Second Draw PPP Loan Application, Classic Hotels certified that:

A.  it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Classic Hotels submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit C, attached hereto.

B.  all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

C.  it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period, with which Classic Hotels proved compliance, as illustrated in Exhibit C, attached hereto.

D.  the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

E.  the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

54.    On February 2, 2021, the Lender approved Classic Hotels' application for a Second Draw PPP Loan.

55.    On March 8, 2021, loan proceeds were disbursed to Classic Hotels and deposited into Classic Hotels' bank account ending in X-46789.

56.    Classic Hotels complied with all certifications in its Second Draw PPP Loan Application.

D.  Second Draw PPP Loan Forgiveness Application

57.    As such, on July 20, 2021, Classic Hotels submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

58.    As part of its Second Draw PPP Loan Forgiveness Application, Classic Hotels certified, *inter alia*, that:

A.  That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds, with which Classic Hotels proved compliance, as illustrated in Exhibit D, attached hereto;

- the amount of PPP loan proceeds that must be used for payroll costs, with which Classic Hotels proved compliance, as illustrated in Exhibit D, attached hereto;

- the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Classic Hotels proved compliance, as illustrated in Exhibit D, attached hereto; and

- the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Classic Hotels proved compliance, as illustrated in Exhibit D, attached hereto.

B.  That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Classic Hotels proved compliance, as illustrated in Exhibit D, attached hereto.

59.    On July 27, 2022, Classic Hotels received notification that its Second Draw PPP Loan had been forgiven.

60. Despite SBA forgiving Classic Hotels' First and Second PPP loans and forgiveness applications, Classic Hotels received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its applications for PPP loans and loan forgiveness. As such, Classic Hotels is under active investigation from DOJ, and an actual case and controversy exists.

**II.    Ocean Hospitality**

61. Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

A. First Draw PPP Loan Application

62. On or before April 3, 2020, Ocean Hospitality applied for a First Draw PPP Loan through Citizens National Bank ("Lender"). A copy of Ocean Hospitality's First Draw PPP Loan Application is attached as Exhibit E.

63. As part of its First Draw PPP Loan application, Ocean Hospitality certified, *inter alia*, that:

A. it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Ocean Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit E, attached hereto.

B. all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

C. funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

D. it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs,

covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Ocean Hospitality can prove compliance, as illustrated in Exhibit E, attached hereto.

E.   the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

64.    On April 13, 2020, the Lender approved Ocean Hospitality's application.

65.    On April 20, 2020, loan proceeds were disbursed to Ocean Hospitality and deposited into Ocean Hospitality's bank account ending in X-02173.

66.    Ocean Hospitality complied with all certifications in its First Draw PPP Loan Application.

B.  First Draw PPP Loan Forgiveness Application

67.    On November 19, 2020, Ocean Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

68.    As part of its First Draw PPP Loan Forgiveness application, Ocean Hospitality certified, *inter alia*, that:

A.   the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Ocean Hospitality proved compliance, as illustrated in Exhibit F, attached hereto;

B.   the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Ocean Hospitality proved compliance, as illustrated in Exhibit F, attached hereto;

C.   the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-

employed individual/general partner, capped at $20,833 per individual, with which Ocean Hospitality proved compliance, as illustrated in Exhibit F, attached hereto;

D. the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Ocean Hospitality proved compliance, as illustrated in Exhibit F, attached hereto;

E. the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Ocean Hospitality proved compliance, as illustrated in Exhibit F, attached hereto;

F. it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Ocean Hospitality proved compliance, as illustrated in Exhibit F, attached hereto;

G. it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Ocean Hospitality proved compliance, as illustrated in Exhibit F, attached hereto.

69. On December 8, 2020, Ocean Hospitality received notification that its First Draw PPP Loan had been forgiven.

B.  Second Draw PPP Loan Application

70.    On January 12, 2021, Ocean Hospitality applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Ocean Hospitality's Second Draw PPP Loan Application is attached hereto as Exhibit G.

71.    As part of its Second Draw PPP Loan application, Ocean Hospitality certified that:

A.  it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Ocean Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit G, attached hereto.

B.  all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

C.  it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period.

D.  the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

72.    On January 22, 2021, the Lender approved Ocean Hospitality's Second Draw PPP Loan Application.

73.    On March 31, 2021, loan proceeds were disbursed to Ocean Hospitality and deposited into Ocean Hospitality's bank account ending in X-02173.

74.    Ocean Hospitality complied with all certifications in its Second Draw PPP Loan

Application.

B. Second Draw PPP Loan Forgiveness Application

75.    On July 21, 2021, Ocean Hospitality submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

76.    As part of its Second Draw PPP Loan Forgiveness application, Ocean Hospitality certified, *inter alia*, that:

A. That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds, with which Ocean Hospitality proved compliance, as illustrated in Exhibit H, attached hereto;

- the amount of PPP loan proceeds that must be used for payroll costs, with which Ocean Hospitality proved compliance, as illustrated in Exhibit H, attached hereto;

- the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Ocean Hospitality proved compliance, as illustrated in Exhibit H, attached hereto; and

- the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Ocean Hospitality proved compliance, as illustrated in Exhibit H, attached hereto.

B. That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Ocean Hospitality proved compliance, as illustrated in Exhibit H, attached hereto.

77.    On July 27, 2021, Ocean Hospitality received notification that its Second Draw PPP Loan had been forgiven.

78.     Despite SBA approving and forgiving Ocean Hospitality's First and Second Draw PPP Loans, Ocean Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness. As such, Ocean Hospitality is under active investigation from DOJ, and an actual case and controversy exists.

### III.    Coastal Hospitality

79.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

A.    First Draw PPP Loan Application

80.     On or before April 3, 2020, Coastal Hospitality applied for a First Draw PPP Loan through Citizens National Bank ("Lender"). A copy of Coastal Hospitality's First Draw PPP Loan Application is attached hereto as Exhibit I.

81.     As part of its First Draw PPP Loan Application, Coastal Hospitality certified, *inter alia*, that:

A.  it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Coastal Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit I, attached hereto.

B.  all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

C.  funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

D.  it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs,

covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Coastal Hospitality can prove compliance, as illustrated in Exhibit I, attached hereto.

E.  the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

82.    On April 11, 2020, the Lender approved Coastal Hospitality's application.

83.    On April 20, 2020, loan proceeds were disbursed to Coastal Hospitality and deposited into Coastal Hospitality's bank account ending in X-92854.

84.    Coastal Hospitality complied with all certifications in its First Draw PPP Loan Application.

B.  First Draw PPP Loan Forgiveness Application

85.    On November 19, 2020, Coastal Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

86.    As part of its First Draw PPP Loan Forgiveness Application, Coastal Hospitality certified, *inter alia*, that:

A.  the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Coastal Hospitality proved compliance, as illustrated in Exhibit J, attached hereto;

B.  the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Coastal Hospitality proved compliance, as illustrated in Exhibit J, attached hereto;

C.  the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-

employed individual/general partner, capped at $20,833 per individual, with which Coastal Hospitality proved compliance, as illustrated in Exhibit J, attached hereto;

D.  the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Coastal Hospitality proved compliance, as illustrated in Exhibit J, attached hereto;

E.  the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Coastal Hospitality proved compliance, as illustrated in Exhibit J, attached hereto;

F.  it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Coastal Hospitality proved compliance, as illustrated in Exhibit J, attached hereto;

G.  it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Coastal Hospitality proved compliance, as illustrated in Exhibit J, attached hereto.

87.    On December 8, 2020, Coastal Hospitality received notification that its First Draw PPP Loan had been forgiven.

C. <u>Second Draw PPP Loan Application</u>

88.    On January 27, 2021, Coastal Hospitality applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Coastal Hospitality's Second Draw PP Loan Application is attached hereto as Exhibit K.

89.    As part of its Second Draw PPP Loan Application, Coastal Hospitality certified that:

A.  it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Coastal Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit K, attached hereto.

B.  all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

C.  it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period.

D.  the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

E.  the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

90.    On February 2, 2021, the Lender approved Coastal Hospitality's application.

91.    On February 18, 2021, loan proceeds were disbursed to Coastal Hospitality and deposited into Coastal Hospitality's bank account ending in X-92854.

92.    Coastal Hospitality complied with all certifications in its Second Draw PPP Loan

Application.

D. Second Draw PPP Loan Forgiveness Application

93.    On August 2, 2021, Coastal Hospitality submitted a forgiveness application for its Second Draw PPP Loan (Form 3508EZ).

94.    As part of its Second Draw PPP Loan Forgiveness Application, Coastal Hospitality certified, *inter alia*, that:

A.  the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Coastal Hospitality proved compliance, as illustrated in Exhibit L, attached hereto;

B.  the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Coastal Hospitality proved compliance, as illustrated in Exhibit L, attached hereto;

C.  the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Coastal Hospitality proved compliance, as illustrated in Exhibit L, attached hereto;

D.  the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Coastal Hospitality proved compliance, as illustrated in Exhibit L, attached hereto;

E.  the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed

loan is punishable under the law, with which Coastal Hospitality proved compliance, as illustrated in Exhibit L, attached hereto;

F.  it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Coastal Hospitality proved compliance, as illustrated in Exhibit L, attached hereto;

G.  it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Coastal Hospitality proved compliance, as illustrated in Exhibit L, attached hereto.

95.    On June 9, 2022, Coastal Hospitality received notification that the SBA would not be forgiving its Second Draw PPP Loan as Coastal Hospitality and its affiliates exceeded the corporate limit for Second Draw PPP Loan forgiveness. Coastal Hospitality timely appealed this decision, and SBA "charged off" the loan as to Coastal Hospitality's Lender, as illustrated in Exhibit M, attached hereto.

96.    Despite the charge off to the Lender, Coastal Hospitality remains liable for the repayment of its Second Draw PPP Loan and interest, because SBA has not provided any correspondence to Coastal Hospitality that its Second Draw PPP Loan is forgiven.

97.    On January 24, 2022, Coastal Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness.

98.     As of July 10, 2024, despite having appealed SBA's Second Draw PPP Loan Forgiveness Application, Coastal Hospitality has not received a notification from SBA that its Second PPP Loan has been forgiven, presumably due to DOJ's investigation.  As such, an actual case and controversy exists.

## IV.    Forest Hospitality

99.     Forest Hospitality repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

### A. First Draw PPP Loan Application

100.    On or before April 3, 2020, Forest Hospitality applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Forest Hospitality's First Draw PPP Loan Application is attached hereto as Exhibit N.

101.    As part of its First Draw PPP Loan Application, Forest Hospitality certified, *inter alia*, that:

A.  it was eligible to receive a loan under the rules in effect at the time the application was submitted, with which Forest Hospitality can prove compliance, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as illustrated in Exhibit N, attached hereto.

B.  all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

C.  funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

D.  it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered

period following the loan, with which Forest Hospitality can prove compliance, as illustrated in Exhibit N, attached hereto.

E. the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

102.    On April 13, 2020, the Lender approved Forest Hospitality's application.

103.    On April 20, 2020, loan proceeds were disbursed to Forest Hospitality and deposited into Forest Hospitality's bank account ending in X-1043.

104.    Forest Hospitality complied with all certifications in its First Draw PPP Loan Application.

A.    First Draw PPP Loan Forgiveness Application

105.    On November 19, 2020, Forest Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

106.    As part of its First Draw PPP Loan Forgiveness application, Forest Hospitality certified, *inter alia*, that:

A.    the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Forest Hospitality proved compliance, as illustrated in Exhibit O, attached hereto;

B.    the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Forest Hospitality proved compliance, as illustrated in Exhibit O, attached hereto;

C.    the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Forest

Hospitality proved compliance, as illustrated in Exhibit O, attached hereto;

D.  the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Forest Hospitality proved compliance, as illustrated in Exhibit O, attached hereto;

E.  the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Forest Hospitality proved compliance, as illustrated in Exhibit O, attached hereto;

F.  it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Forest Hospitality proved compliance, as illustrated in Exhibit O, attached hereto;

G.  it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Forest Hospitality proved compliance, as illustrated in Exhibit O, attached hereto.

107.    On December 8, 2020, Forest Hospitality received notification that its First Draw PPP Loan had been forgiven.

C.  Second Draw PPP Loan Application

108.    On January 12, 2021, Forest Hospitality applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Forest Hospitality's Second Draw PPP Loan Application is attached hereto as Exhibit P.

109.    As part of its Second Draw PPP Loan Application, Forest Hospitality certified, *inter alia*, that:

A.  it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Forest Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit P, attached hereto.

B.  all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

C.  it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period.

D.  the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

E.  the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

110.    On February 2, 2021, the Lender approved Forest Hospitality's application.

111.    On March 3, 2021, loan proceeds were disbursed to Forest Hospitality and deposited into Forest Hospitality's bank account ending in X-1043.

112.    Forest Hospitality complied with all certifications in its Second Draw PPP Loan Application.

D.  Second Draw PPP Loan Forgiveness Application

113.    On July 19, 2021, Forest Hospitality submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

114.    As part of its Second Draw PPP Loan Forgiveness application, Forest Hospitality certified, *inter alia*, that:

A.  That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds, with which Forest Hospitality proved compliance, as illustrated in Exhibit Q, attached hereto;

- the amount of PPP loan proceeds that must be used for payroll costs, with which Forest Hospitality proved compliance, as illustrated in Exhibit Q attached hereto;

- the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Forest Hospitality proved compliance, as illustrated in Exhibit Q, attached hereto; and

- the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Forest Hospitality proved compliance, as illustrated in Exhibit Q, attached hereto.

B.  That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Forest Hospitality proved compliance, as illustrated in Exhibit Q, attached hereto.

115.    On June 9, 2022, Forest Hospitality received notification that the SBA would not be forgiving its Second Draw PPP Loan as Forest Hospitality and its affiliates exceeded the corporate limit for Second Draw PPP Loan forgiveness. Forest Hospitality timely appealed this

decision, and SBA "charged off" the loan as to Forest Hospitality's Lender, as illustrated in Exhibit R, attached hereto.

116.    Despite the charge off to the Lender, Forest Hospitality remains liable for the repayment of its Second Draw PPP Loan and interest, because SBA has not provided any correspondence to Forest Hospitality that its Second Draw PPP Loan is forgiven.

117.    On January 24, 2022, Forest Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness.

118.    As of July 10, 2024, despite having appealed FCA's Second Draw PPP Loan Forgiveness Application, Forest Hospitality has not received a final determination regarding its Second Draw PPP Loan Forgiveness Application, presumably due to DOJ's investigation.  As such, an actual case and controversy exists.

## IV.    Jackson Downtown

121.    Jackson Downtown repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

A. First Draw PPP Loan Application

122.    On or before April 3, 2020, Jackson Downtown applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Jackson Downtown's First Draw PPP Loan Application is attached hereto as Exhibit S.

123.    As part of its First Draw PPP Loan Application, Jackson Downtown certified, *inter alia*, that:

A.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, with which Jackson Downtown can prove compliance, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one

physical location, and had less than 500 employees per location, as illustrated in Exhibit S, attached hereto.

   B.    all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

   C.    funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

   D.    it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Jackson Downtown can prove compliance, as illustrated in Exhibit S, attached hereto.

   124.   the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

   125.   On April 13, 2020, the Lender approved Jackson Downtown's application.

   126.   On April 20, 2020, loan proceeds were disbursed to Jackson Downtown and deposited into Jackson Downtown's bank account ending in X-33313.

   127.   Jackson Downtown complied with all certifications in its First Draw PPP Loan Application.

A.    First Draw PPP Loan Forgiveness Application

   128.   On November 19, 2020, Jackson Downtown submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

   129.   As part of its First Draw PPP Loan Forgiveness application, Jackson Downtown certified, *inter alia*, that:

A.  the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Jackson Downtown proved compliance, as illustrated in Exhibit T, attached hereto;

B.  the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Jackson Downtown proved compliance, as illustrated in Exhibit T, attached hereto;

C.  the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Jackson Downtown proved compliance, as illustrated in Exhibit T, attached hereto;

D.  the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Jackson Downtown proved compliance, as illustrated in Exhibit T, attached hereto;

E.  the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Jackson Downtown prove compliance, as illustrated in Exhibit T, attached hereto;

F.  it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Jackson Downtown proved compliance, as illustrated in Exhibit T, attached hereto;

G.  it was unable to operate between February 15, 2020, and the end of the Covered

Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Jackson Downtown proved compliance, as illustrated in Exhibit T, attached hereto.

130.    On December 8, 2020, Jackson Downtown received notification that its First Draw PPP Loan had been forgiven.

C.  Second Draw PPP Loan Application

131.    On January 12, 2021, Jackson Downtown applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Jackson Downtown's Second Draw PPP Loan Application is attached hereto as Exhibit U.

132.    As part of its Second Draw PPP Loan Application, Jackson Downtown certified, *inter alia*, that:

A.  it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Jackson Downtown submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location, as detailed in Exhibit U, attached hereto.

B.  all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

C.  it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period.

D.  the funds would be used to retain workers and maintain payroll; or make payments

for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules, with which Jackson Downtown can prove compliance, as illustrated in Exhibit U, attached hereto.

   E. the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

   133. On January 25, 2021, the Lender approved Jackson Downtown's application.

   134. On February 3, 2021, loan proceeds were disbursed to Jackson Downtown and deposited into Jackson Downtown's bank account ending in X-33313.

   135. Jackson Downtown complied with all certifications in its Second Draw PPP Loan Application.

  D. <u>Second Draw PPP Loan Forgiveness Application</u>

   136. On July 19, 2021, Jackson Downtown submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

   119. As part of its Second Draw PPP Loan Forgiveness application, Jackson Downtown certified, *inter alia*, that:

   A. That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

    • eligible uses of PPP loan proceeds, with which Jackson Downtown proved compliance, as illustrated in Exhibit V, attached hereto;

    • the amount of PPP loan proceeds that must be used for payroll costs, with which Jackson Downtown proved compliance, as illustrated in Exhibit V attached hereto;

    • the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Jackson Downtown proved compliance, as illustrated in

Exhibit V, attached hereto; and

- the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Jackson Downtown proved compliance, as illustrated in Exhibit V, attached hereto.

B. That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Jackson Downtown proved compliance, as illustrated in Exhibit V, attached hereto.

120.    On June 9, 2022, Jackson Downtown received notification that the SBA would not be forgiving its second PPP loan as Jackson Downtown and its affiliates exceeded the corporate limit for Second Draw PPP Loan forgiveness. Jackson Downtown timely appealed this decision, and SBA "charged off" the loan as to Jackson Downtown's Lender, as illustrated in Exhibit W, attached hereto.

121.    Despite the charge off to the Lender, Jackson Downtown remains liable for the repayment of its Second Draw PPP Loan and interest, because SBA has not provided any correspondence to Jackson Downtown that its Second Draw PPP Loan is forgiven.

122.    On January 24, 2022, Jackson Downtown received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness.

123.    As of July 10, 2024, despite having appealed FCA's Second Draw PPP Loan Forgiveness Application, Jackson Downtown has not received a final determination regarding its Second Draw PPP Loan forgiveness, presumably due to DOJ's investigation.  As such, an actual case and controversy exists.

**CLAIMS FOR RELIEF**

## DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201

137.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

138.    Plaintiffs face the risk of a civil enforcement action under the FCA.

139.    Defendants' interpretation of the FCA and its regulations is inconsistent with the statutory and regulatory text and purports to obligate Plaintiffs to follow requirements that are unsupported by the relevant statute and regulations.

140.    Accordingly, an actual or substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties.

141.    This dispute is ripe. As set forth above, on information and belief, Defendants intend to file a civil enforcement action based on alleged violations of the False Claims Act, and Plaintiffs dispute the factual and legal basis for such action.

142.    A declaration would clarify and settle the parties' legal obligations under the text of the FCA and its implementing regulations.

143.    Plaintiffs are thus entitled to declaratory relief as set forth below.

### WRIT OF MANDAMUS AS TO THE
### SECOND PPP DRAW LOAN FORGIVENESS APPLICATIONS FOR
### FOREST HOSPITALITY, COASTAL HOSPITALITY, AND
### JACKSON DOWNTOWN
### (28 U.S.C. §§ 1361 and 1651(a))

124.    Forest Hospitality, Coastal Hospitality, and Jackson Downtown repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

125.    In relevant part, the All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writes necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

126.    District Courts may grant mandamus relief by "compel[ling] an officer or employee of the United States of any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

127.    A mandamus is warranted when an agency's delay in rendering a decision is egregious. *In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138 (9th Cir. 2020). "Repeatedly courts in this and other circuits have concluded that "a reasonable time for agency action is typically counted in weeks or months, not years." *In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020) (internal quotations omitted.); *see In re Core Commc'ns*, 531 F.3d 849, 857 (D.C. Cir. 2008) (finding six-year delay unreasonable); *In re Bluewater Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000) (finding nine-year delay unreasonable); *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (per curiam) (finding six year delay unreasonable).

128.    As outlined above, Forest Hospitality, Coastal Hospitality, and Jackson Downtown submitted their Second Draw PPP Loan Forgiveness Applications and accompanying documents to SBA on August 2, 2021 (Coastal Hospitality) and July 19, 2021 (Jackson Downtown and Forest Hospitality). As of July 10, 2024, almost three years after receiving Forest Hospitality's, Coastal Hospitality's, and Jackson Downtown's Second Draw PPP Loan Forgiveness Applications, SBA has not provided Forest Hospitality, Coastal Hospitality, and Jackson Downtown with notification that their Second Draw PPP Loans have been forgiven.

129.    A mandamus compelling SBA forgive to Forest Hospitality's, Coastal Hospitality's, and Jackson Downtown's Second Draw PPP Loans is warranted given the egregious and unreasonable delay.

**PRAYER FOR RELIEF**

For the reasons above, Plaintiff respectfully requests that the Court:

1.   Declare that:

    a.   Plaintiffs were eligible to apply for a PPP loan;

    b.   Plaintiffs were eligible to receive a PPP loan;

    c.   Plaintiffs' commingling of PPP loan proceeds with current monies in existing bank accounts was not prohibited by and did not violate the U.S. Code or SBA regulations;

    d.   Plaintiffs used the PPP loan proceeds appropriately for eligible expenses;

    e.   Plaintiffs' use of its own funds, which were commingled with but in excess of PPP loan proceeds, for non-PPP purposes did not violate the U.S. Code or SBA regulations, and

    f.   Plaintiffs did not falsely certify their PPP loan forgiveness application.

2. Enter an order compelling Defendants SBA and Isabella Casillas Guzman to:

    a.   Immediately forgive Forest Hospitality's, Coastal Hospitality's, and Jackson Downtown's Second Draw PPP Loans; and

    b.   Implement a full, speedy, and adequate administrative review process if Defendants intend to deny forgiveness of Plaintiff's Second Draw PPP Loans.

3. Award costs and attorneys' fees to Plaintiff; and

Grant such other relief as may be just and proper.

THIS the 10th day of July, 2024.

Respectfully submitted,

BY:    */s/ D. Michael Hurst, Jr.*
    D. Michael Hurst, Jr., MB# 99990
    Nash E. Gilmore, MB# 105554
    4270 I-55 North
    Jackson, MS 39211-6391
    Telephone: 601-352-2300
    Facsimile: 601-360-9777
    mike.hurst@phelps.com
    nash.gilmore@phelps.com

Arthur F. Jernigan, Jr. MSB#3092
Jernigan Copeland Attorneys PLLC
970 Ebenezer Blvd.
Madison, Ms. 39110
601-427-0021
ajernigan@jcalawfirm.com

*Attorneys for Plaintiffs*